UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Anthony Marc Mostajo, et al., | No. 2:17-cv-00350-KJM-AC |
| Plaintiffs, | ORDER |
| v. | |
| Nationwide Mutual Insurance Company, | |
| Defendant. | |

Lead plaintiffs Anthony Marc Mostajo and Elaine Quedens move for preliminary approval of class settlement. *See generally* Mot., ECF No. 138. Mr. Mostajo filed this putative class action on behalf of former commercial line claims adjusters against their employer, defendant Nationwide Mutual Insurance Company (Nationwide), alleging defendant reclassified the claims adjusters from exempt to non-exempt employees, did not pay them for all hours worked, and discouraged them from reporting overtime under threat of termination. Mem. P. & A. at 9, ECF No. 138-1.[1] He later added claims for unpaid, accrued vacation time under California Labor Code section 227.3, as well as a derivative representative claim under California's Private

---

[1] The court cites to page numbers applied by the court's CM/ECF system, located at the top of each page.

Attorney General Act (PAGA) for the alleged underlying Labor Code violations. *Id.* at 11. Nationwide does not oppose the pending motion. *Id.* at 9. The court submitted the matter on the papers. Minute Order, ECF No. 140. As explained below, **the motion is granted.**

I.  **FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND**

Prior to 2004, defendant classified claims adjusters in California as exempt employees. Third Am. Compl. (TAC) ¶ 4, ECF No. 77. As a result, defendant did not pay the claims adjusters overtime compensation. *Id.* Following a civil action filed in 2002, defendant conducted an analysis of the claims adjuster position and, in 2004, reclassified the claims adjusters working in California as non-exempt employees. *Id.* ¶¶ 4–5. Defendant told claims adjusters, as non-exempt employees, that they would be eligible for overtime compensation. *Id.* ¶ 6. However, by employing a policy and practice of not allowing claims adjusters to report and/or receive compensation for all of the hours and overtime worked, defendant did not pay claims adjusters for all hours and/or overtime worked. *Id.* ¶ 7. Defendant also had a policy whereby it did not pay its California employees for all vested and accrued vacation time. *Id.* ¶ 8. As a result of these policies and actions, defendant also allegedly failed to provide accurate wage statements to employees as required by California Labor Code section 226. *Id.* ¶ 9. The complaint is styled as a putative Rule 23 class action and PAGA action. *See generally id.*

In February 2020, the judge then presiding over this matter granted plaintiffs' motion to certify the class. Previous Order, ECF No. 96. Specifically, the court certified the following two subclasses: Subclass A, a class of persons employed by defendant as commercial lines claims adjusters in California from January 9, 2013 through the date of the preliminary approval; and Subclass B, all former California employees employed by defendant since January 9, 2013 through the date of preliminary approval who accrued vacation time for which defendant did not pay them. *Id.* at 2–3. The court approved plaintiffs Anthony Marc Mostajo and Elaine Quedens as representatives for the class. *Id.* at 3. Defendant now contends that many claims adjusters reported and were paid for significant amounts of overtime. Mem. P. & A. at 13. Likewise, defendant maintains the court erred in granting certification of Subclass A and has conveyed an

/////

intent to file a motion for decertification and a partial summary judgment motion and appeal any adverse judgment. *Id.*

Following the court's class certification order, the claims administrator mailed notice to individuals within the subclasses, providing them an opportunity to opt-out, which twenty individuals did. Workman Decl. ¶ 13. The parties engaged in extensive discovery and motion practice over approximately eighteen months, during which time defendant estimated that (1) for the period between February 14, 2013 and March 30, 2021, 637 of the 1,098 individuals employed in California forfeited $1,443,806.22 in vacation time at termination, and (2) defendant did not allow another $1,665,699.14 in accrued vacation time to carry over from year to year during the same time period. *Id.* ¶ 6. Excluding counsel's estimated interest in the amount of $1,523,056, the total value of the unpaid vacation time claim alone is approximately $3,109,505.22. *Id.*

Separately, plaintiffs retained experts to survey and calculate the potential damages that flowed from the hours plaintiffs contended claims adjusters worked but were not compensated. Mem. P. & A. at 14. Plaintiffs' experts concluded the value of this claim totaled $1,863,284, plus wage statement penalties of $212,500, waiting time penalties of $647,769, and PAGA penalties of $109,100. *Id.* Accordingly, plaintiffs estimated the total potential value of the Subclass A claims to be $2,832,653, and the total value of both subclass claims as $5,942,158.36. *Id.* Defendant disagreed with this estimate and counter-designated an expert who concluded the maximum potential value of the uncompensated time was less than $900,000, *id.* at 14–15, which would make the total estimated value of both subclass claims closer to $4,000,000, excluding interest and penalties.

After conducting their respective assessments, on January 6, 2022, the parties participated in a day-long mediation with Tripper Ortman, an experienced wage and hour class action mediator. Workman Decl. ¶ 14. Following mediation, the parties were able to reach an agreement, which is before this court for approval. *Id.* The settlement agreement covers the two certified subclasses as well as a PAGA Group, which encompasses all class members employed by defendant in California between February 15, 2017 and January 31, 2022. *Id.* ¶ 16.

1       Under the settlement, defendant agrees to pay a "Maximum Settlement Amount" of
2  $3,800,000, which includes all attorneys' fees, litigation costs, claims administration fees, and
3  incentive payments to the class representatives." Settlement Agreement ¶¶ 1 & 17, Workman
4  Decl. Ex 2, ECF No. 138-2. Several deductions would be taken from the Maximum Settlement
5  Amount before any funds are distributed to the putative class. First, class counsel may seek up to
6  $950,000, or 25 percent of the Maximum Settlement Amount, and actual litigation costs and
7  expenses up to $630,000. *Id.* ¶ 68. This would amount to 41.5 percent of the Maximum
8  Settlement Agreement; defendant agrees not to object, provided the fees and costs do not exceed
9  these set amounts and the requested expenses are documented. *Id.* Second, class counsel may
10 seek a service or "incentive" award not to exceed $25,000 for each class representative. *Id.*
11 Third, class counsel would deduct settlement administration expenses not to exceed $15,000. *Id.*
12 Finally, $50,000 would be allocated to the PAGA payment, of which 75 percent would go to the
13 California Labor and Workforce Development Agency and 25 percent to the PAGA Group
14 Payment. *Id.* ¶ 29; *see* Cal. Lab. Code § 2699(i). The PAGA Group Payment would be
15 distributed evenly among all members of the PAGA Group. Workman Decl. ¶ 17.

16      After these deductions, the Net Settlement Amount (NSA) for distribution to class
17 members is estimated to be no less than $2,105,000. *Id.* The payments to Subclass A will be
18 distributed on a prorated basis to participating class members, based on each member's eligible
19 workweeks as reflected on defendant's internal records and according to the following formula:
20 (Subclass A Member's Eligible Workweeks ÷ Total Eligible Workweeks for all Participating
21 Subclass A Members) × (Subclass A Net Settlement Fund) = Individual Settlement Payment. *Id.*
22 The parties have agreed to allocate $750,0000 of the NSA to the Subclass A Net Settlement Fund.
23 *Id.* There are approximately 120 members of Subclass A, so the average amount each will
24 receive is approximately $6,250. *Id.*

25      The payments to Subclass B also will be distributed on a prorated basis to participating
26 class members and follow this formula: (Subclass B Member's Amount of vacation time accrued
27 for which they were not paid ÷ Total Amount of vacation time earned by all Participating
28 Members of Subclass B for which they were not paid) x (Subclass B Net Settlement Fund) =

4

Individual Settlement Payment. *Id.* The parties have agreed to allocate $1,355,000 of the NSA to the Subclass B Net Settlement Fund. *See* Not. to New Class Members of Proposed Class Action Settlement, Workman Decl. Ex. A-1, ECF No. 138-2. There are approximately 1,200 members of Subclass B, and class counsel estimates the average amount each will receive is $1,130. Workman Decl. ¶ 17.

If this court preliminarily approves the settlement agreement, a settlement administrator would distribute settlement notices and payments to participating class members. *Id*. Within 14 days after the date of preliminary approval by the court, defendant will provide the settlement administrator with the name(s), last known residence addresses, eligible workweeks worked for Subclass A Members, and amount of vacation time accrued in California by Subclass B Members during the class period for which defendant did not pay them. Settlement Agreement ¶ 82. Within 15 days after receiving this information from defendant, the settlement administrator will run the class data list through the National Change of Address database and use the most recent address for each Class Member, either from defendant's records or the National Change of Address database, before mailing the Notice of Class Settlement. *Id.* ¶ 84. The settlement administrator will also take reasonable steps to locate any class member whose notice is thereafter returned as undeliverable. *Id*. ¶ 85. Notice will provide class members with 45 days to object to or opt out of the settlement. *See id*. ¶¶ 71, 111.

## II.     LEGAL STANDARDS

### A.     Overarching Principles

"Courts have long recognized that 'settlement class actions present unique due process concerns for absent class members.'" *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled in part on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)). When it comes to settlement, the class's motivations may not perfectly square with those of its attorneys. *See id.* An attorney representing a settlement class may be tempted to accept an inferior settlement in return for a higher fee. *Knisley v. Network Associates, Inc.*, 312 F.3d 1123, 1125 (9th Cir. 2002). Likewise, defense counsel may be happy to pay his counterpart a bit more

if the overall deal is better for his client. *See id.*; *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 778 (3d Cir. 1995) (noting criticism that settlement class can be vehicle for collusive settlements that primarily serve the interests of defendants and of plaintiffs' counsel).

As the Ninth Circuit has recognized, however, the "governing principles may be clear, but their application is painstakingly fact-specific," and the court normally sees only the final result of the parties' bargaining. *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). "Judicial review also takes place in the shadow of the reality that rejection of a settlement creates not only delay but also a state of uncertainty on all sides, with whatever gains were potentially achieved for the putative class put at risk." *Id.* Federal courts have long recognized a "strong" policy in favor of settling class actions." *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012) (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

**B.     Rule 23**

Here, plaintiffs request preliminary approval of class settlement under Rule 23 based on violations of the California Labor Code and PAGA. Mem. P. & A. at 16; *see Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019) (noting court must "review and approve any settlement of any civil action filed pursuant to [PAGA]"). Because the class has already been certified, this court must determine it "will likely be able to" "approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B). Likely approval under Rule 23(e)(2) focuses on the fairness of the settlement for absent class members. The court evaluates preliminarily whether the proposed settlement "is fair, reasonable, and adequate," considering several factors listed in the Rule, such as whether the parties negotiated at arm's length and the terms of any agreement on fee awards. *See* Fed. R. Civ. P. 23(e)(2)(A)–(D). Over the years, the Ninth Circuit has also identified several additional "guideposts," "warning signs," and "red flags" for district courts to consider, such as the strength of the plaintiffs' case and the amount of fees in proportion to the compensation to class members. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 610–11 & nn.18–19 (9th Cir. 2018).

**C. PAGA Claims – Special Considerations**

When plaintiffs bring a PAGA action, they do so as the "proxy or agent of the state's labor law enforcement agencies, . . . who are real parties in interest." *Sakkab v. Luxottica Retail N. Am. Inc.*, 803 F. 3d 425, 435 (9th Cir. 2015). Any PAGA judgment binds not only members of the class, but similarly situated workers who opt out of the class and the state's labor law enforcement agencies. *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2014). "[W]here plaintiffs bring a PAGA representative claim, they take on a special responsibility to their fellow aggrieved workers who are effectively bound by any judgment." *O'Connor v. Uber Technologies, Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (citing *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 381 (2014)).

A court analyzing the compromise of a PAGA claim must therefore consider whether the settlement is "'fundamentally fair, reasonable, and adequate' with reference to the public policies underlying the PAGA." *O'Connor*, 201 F. Supp. 3d at 1133 (citation omitted); *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d at 979. "By providing fair compensation to the class members as employees and substantial monetary relief, a settlement not only vindicates the rights of the class members as employees but may have a deterrent effect upon the defendant employer and other employers, an objective of PAGA." *O'Connor*, 201 F. Supp. 3d at 1134.

**III. DISCUSSION**

**A. Rule 23(e)—Preliminary Certification and Approval**

Under Rule 23(e), a class action may be settled "only with the court's approval," and the court may provide such approval "only after a hearing[2] and only on finding that it is fair, reasonable, and adequate . . . ." after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

---

[2] The hearing requirement applies to final approval, and the court will observe the requirement at that time. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (explaining hearing requirement applies before final approval).

     (C)     the relief provided for the class is adequate, taking into account:

          (i)     the costs, risks, and delay of trial and appeal;

          (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

          (iii)     the terms of any proposed award of attorney's fees, including timing of payment; and

          (iv)     any agreement required to be identified under Rule 23(e)(3); and

     (D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Ninth Circuit decisions predating this rule list several similar factors for district courts to consider when weighing a proposed settlement agreement:

- "the strength of the plaintiffs' case";
- "the risk, expense, complexity, and likely duration of further litigation";
- "the risk of maintaining class action status throughout the trial";
- "the amount offered in settlement";
- "the extent of discovery completed and the stage of the proceedings";
- "the experience and views of counsel";
- "the presence of a governmental participant"; and
- "the reaction of the class members to the proposed settlement."

*In re Volkswagen*, 895 F.3d at 610 n.18 (quoting *Hanlon*, 150 F.3d at 1026); *see also* Fed. R. Civ. P. 23, Advisory Committee's Notes to 2018 Amendment (explaining factors listed in Rule 23(e)(2) not intended to "displace" factors identified in existing judicial decisions).

     Even where, as here, a class has already been certified, a court should also consider "red flags" signaling an unfair settlement, which may include: (1) fees that make up a disproportionately large part of the distribution to the class, (2) "clear sailing" agreements "providing for the payment of attorneys' fees separate and apart from class funds" without defense objection, and (3) agreements that permit unpaid fees to revert to defendants. *Bluetooth*, 654 F.3d at 947 (citations omitted); *Briseno v. Henderson*, 998 F.3d 1014, 1025 (9th Cir. 2021)

/////

(observing that under revised Rule 23(e)(2), courts should apply *Bluetooth* factors even for post-class certification settlements because "class certification does not cleanse all sins").

Application of many of the applicable factors suggests the proposed settlement here is fair, reasonable, and adequate. The class representatives and their counsel must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts consider both whether "(1) [] the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) [] the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class[.]" *Hanlon*, 150 F.3d at 1020. "Serious conflicts of interest can impair adequate representation by the named plaintiffs, yet leave absent class members bound to the final judgment, thereby violating due process." *In re Volkswagen*, 895 F.3d at 607.

Here, Mr. Mostajo avers even before he initiated the action, Ms. Workman and others at her firm worked closely with him. Mostajo Decl. ¶ 21, ECF No. 138-5. Ms. Quedens also represents she worked with the firm before joining the lawsuit. Quedens Decl. ¶ 23, ECF No. 138-4. Ms. Workman has the qualifications to suggest she can fairly and adequately represent the class: She graduated from Texas Tech School of Law in 1989, after which she clerked for the Honorable Jack Hightower of the Texas Supreme Court. Workman Decl. ¶ 25. She then worked as an associate for the international law firms of Sonnenschein Nath & Rosenthal (currently SNR Denton) and Russin & Vecchi. *See id*. She started her predecessor firm, Qualls & Workman, LLP, in 1996, and her current firm, Workman Law Firm, PC, in 2014. *Id*. Finally, counsel filed this action in 2017 and investigated the facts of the claims prior to filing the action. Mem. P. & A. at 27. She also conducted extensive discovery throughout the case, resulting in defendant's producing over 45,000 documents. *Id*. The parties did not reach their preliminary settlement agreement until plaintiffs' counsel had sufficient information to make an informed judgment regarding the likelihood of success on the merits and the results that could be obtained at trial. *Id*. The court finds class counsel's representation is adequate. The lead plaintiffs also adequately represent class interests: both had worked for defendant for a total of nearly three decades, and both seek to ensure their long-time colleagues are compensated for their work and vacation time. *See generally* Quedens Decl.; Mostajo Decl.

The court has already noted the arm's-length negotiations between the parties and noted above the adequacy of Ms. Workman's representation of plaintiffs. The proposed settlement also appears fair, reasonable, and adequate given the parties' understanding of the strength and weaknesses of their positions after engaging in significant negotiations with an experienced mediator. *See* Workman Decl. ¶ 14 (describing parties' acceptance of mediator's proposal, reaching settlement). In order to fully evaluate the reasonableness of the parties' understandings in this respect, the court will direct they file in camera their mediation briefs with a motion for final approval.

Class members will have 180 days, a reasonable period of time to cash their settlement checks. Settlement Agreement ¶ 98. Any uncashed checks will be voided after that time and paid by the Settlement Administrator to the California State Controller's Office for Unclaimed Property in the name of the class member, available for collection through the Controller's established procedures. *Id*. No settlement funds will revert to Nationwide.

Other elements of the proposed settlement agreement, however, weigh against preliminary approval under Rule 23(e). First, a disproportionate award to counsel can be a "subtle sign that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Bluetooth*, 654 F. 3d at 947 (citations omitted). The benchmark for attorney's fees in the Ninth Circuit is 25 percent. *See In re Easysaver Rewards Litig.*, 906 F. 3d 747, 754 (9th Cir. 2018). At the same time, the Circuit has allowed higher percentage fee awards to stand. *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value, with 25 percent considered a benchmark percentage.") (quoting *Powers v. Eichen,* 229 F.3d 1249, 1256 (9th Cir. 2000)). Courts in this district, like those in other districts as well, have approved fees at 33 percent of the settlement fund for matters involving PAGA claims, *see Rodriguez v. Penske Logistics, LLC*, No. 14-2061, 2019 WL 246652, at *12–13 (E.D. Cal. Jan. 17, 2019) (approving attorney's fees representing 31.2 percent of common fund); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010) (approving attorney's fees equaling 33.3 percent of common fund in settlement of wage-and-hour putative class action).

10

Such departures from the lower benchmark, however, are possible only if they are properly supported and justified. *See Powers,* 229 F.3d at 1257.

Here, the proposed settlement includes an award of attorneys' fees up to $950,000, or 25 percent of the Maximum Settlement Amount. Settlement Agreement ¶¶ 17, 68. At first blush, this appears perfectly reasonable and well within the Ninth Circuit's norms. However, a closer look reveals some troubling facts. Counsel also seeks up to $630,000 in actual litigation costs and expenses. *Id.* ¶ 68. Combined with the fees, this amount could bring the total fees and expenses to $1,580,000, or 41.5 percent of the Maximum Settlement Amount. Settlement Agreement ¶¶ 17, 68. If class counsel were awarded the maximum fees plus expenses, the total dollar figure would exceed 75 percent of the $2,105,000 that the parties have agreed to allocate to Subclasses A and B. Workman Decl. ¶ 17. Even awarding just the maximum attorneys' fees allowable would equate to 45 percent of the total dollar amount allocated to Subclasses A and B. Unless counsel ultimately can point to authority showing that courts routinely approve settlements where the fees plus expenses exceed both (1) 40 percent of the total settlement value, and (2) 75 percent of the total class payment, this court is unlikely to approve this settlement agreement. Furthermore, counsel has not yet provided the court with information to allow a cross-check of the proposed fee award against the "lodestar" fee. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). Counsel represents the lodestar information will be forthcoming in connection with a motion for final approval. Workman Decl. ¶ 29 ("Prior to final approval, [counsel] will file a motion for attorneys' fees and costs setting forth the hours committed to this case, the costs incurred . . . hourly rates and the total lodestar to allow . . . cross-check . . ."). With a motion for final approval, counsel also must be prepared to justify the amount in fees and costs sought with reference to the case law.

Second, the proposed $25,000 incentive award for each class representative appears to be on the high end of such awards. As described above, a large incentive award sets the named plaintiffs apart from the absent class members if the settlement is approved; plaintiffs who stand to receive several thousand dollars extra have an incentive to support agreements that are unfair to absent class members. *See Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1165 (9th Cir.

2013) ("Instead of being solely concerned about the adequacy of the settlement for the absent class members, the class representatives now had a $5,000 incentive to support the settlement regardless of its fairness . . . ."). For this reason, although the Ninth Circuit has agreed that incentive awards "may be proper," it has "cautioned that awarding them should not become routine practice." *Id.* at 1164. "[I]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Id.* (quoting *Staton v. Boeing Co.*, 327 F.3d at 975). Practically speaking, however, "incentive awards that are intended to compensate class representatives for work undertaken on behalf of a class are fairly typical in class action cases." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (internal quotations omitted). Before final approval, plaintiffs must provide additional information to allow the court's full consideration of whether the proposed incentive fees here are warranted under all the circumstances.

Third, as noted above, the settlement agreement contains a "clear sailing" provision, under which defendant agrees not to challenge a motion for attorneys' fees up to $950,000 or expenses up to $630,000, so long as these fees and expenses are documented. Settlement Agreement ¶ 68. "The very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class." *Bluetooth*, 654 F.3d at 948 (quoting *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991)). In conjunction with the relatively large percentage of the award proposed to pay attorneys' fees and expenses, the clear sailing provision merits a higher degree of scrutiny before final approval, given the potential inference of a collusive settlement. In considering any motion for final approval, the court will require a more robust showing that collusion is not an actual concern.

Despite these concerns, the court remains mindful of the "strong judicial policy favor[ing] settlement of class actions." *Adoma*, 913 F. Supp. 2d at 972 (citing *Class Plaintiffs*, 955 F.2d at 1276). In light of that policy and the positive indicators of overall fairness noted above, the court concludes the settlement agreement is likely to be approved under Rule 23(e)(2) if the concerns it has expressed can be resolved at the final approval stage. That said, the court offers no assurance

that the proposed fee and incentive awards will be approved without the additional information called for by this order. *See, e.g.*, *Greer v. Dick's Sporting Goods, Inc.*, No. 15-01063, 2019 WL 4034478, at *5–7 (E.D. Cal. Aug. 27, 2019) (granting preliminary approval but deferring decision on fees and incentive awards).

### B. Private Attorneys General Act (PAGA)

The court next considers whether the settlement is "'fundamentally fair, reasonable, and adequate' with reference to the public policies underlying the PAGA." *O'Connor*, 201 F. Supp. 3d at 1133 (citation omitted). Where PAGA penalties are compromised for too small a percentage of their total value, a court may not find a settlement meets fundamental fairness requirements. In *O'Connor*, the plaintiffs and the LWDA agreed the possible value of a PAGA penalty exceeded $1 billion, but the plaintiffs attempted to compromise the claim for only $1 million. *Id*. Even accounting for the possibility of a court's reducing such a high verdict as "unjust, arbitrary and oppressive, or confiscatory" as provided in California Labor Code section 2699(e)(2), the court in *O'Connor* found no analysis supported settling the PAGA claim for 0.1 percent of its estimated value and so rejected the settlement. *Id*. Other courts, by contrast, have approved settlements compromising PAGA penalties for between one and six percent of their maximum value, given the circumstances of the particular cases involved. *See, e.g., Ahmed v. Beverly Health and Rehabilitation Servs., Inc.*, No. 16-1747, 2018 WL 746393, at *10 (E. D. Cal. Feb. 6, 2018) (approving 1 percent of gross settlement as PAGA settlement); *Rodriguez v. RCO Reforesting, Inc.*, No. 16-2523, 2019 WL 331159 (E. D. Cal. Jan. 24, 2019) (approving 6 percent of total settlement as PAGA penalties).

Here, plaintiffs' expert estimated the value of the PAGA claims to be $109,100, but this calculation is based solely on the unpaid compensation claims for the 120 individuals in Subclass A, not the unpaid, accrued vacation time claims for the 1,200 employees in Subclass B.[3] Workman Decl. ¶¶ 4, 17; Settlement Agreement at 14. Without additional information about the estimated value of the PAGA claims for Subclass B, the court cannot evaluate whether the

---

[3] If the court's understanding of the expert's calculation is incorrect, the parties may clarify this in the motion for final approval of the settlement.

$50,000 allocated to the PAGA penalty is fundamentally fair, adequate, and reasonable. The court also cautions counsel that each member of the PAGA class would receive approximately only $10 each under the proposed settlement agreement. Before approving any final settlement agreement, the court would require additional authority supporting why $10 per class member is appropriate.

Parties seeking approval of a PAGA settlement must also submit the proposed settlement to the California LWDA for comment at the same time they submit their motion for preliminary approval of the settlement. *Ramirez v. Benito Valley Farms, LLC*, No. 16-04708, 2017 WL 3670794, at *2 (N.D. Cal. Aug. 25, 2017); Cal. Lab. Code § 2699(l)(2) ("The proposed settlement shall be submitted to the agency at the same time that it is submitted to the court."). While plaintiffs' counsel has already submitted the current proposed settlement to the LWDA, *see* Workman Decl. ¶ 30, the parties will need to submit a revised proposed settlement if the proposed PAGA penalty changes.[4]

### C. Proposed Class Notice

Federal Rule of Civil Procedure 23(e) requires that prior to settlement of a class action, the court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Where a class is certified under Rule 23(b)(3), the notice must meet the requirements of Rule 23(c)(2)(B). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F. 3d at 1025.

Notice must be the "best notice . . . practicable under the circumstances" and must provide individual notice "to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The notice must clearly and concisely state in plain, easily understood language:

(i) the nature of the action;

(ii) the definition of the class certified;

---

[4] Because this case was filed after July 1, 2016, the parties are required to submit the proposed settlement agreement to the LWDA at the same time it was submitted to the court. *See* 2016 Cal. Legis. Serv. Ch. 31, § 189 (S.B. 836) (West).

14

    (iii)  the class claims, issues, or defenses;

    (iv)  that a class member may enter an appearance through an attorney if the member so desires;

    (v)  that the court will exclude from the class any member who requests exclusion;

    (vi)  the time and manner for requesting exclusion; and

    (vii)  the binding effect of a class judgment on members under Rule 23(c)(3).

*Id*. "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citation omitted).

Plaintiffs provide two notices of class action settlement with the settlement agreement here. The first is for new class members, which includes anyone who became part of Subclass A and/or B after the class certification notice was mailed in 2020. *See* Not. to New Class Members of Proposed Class Action Settlement.[5] The second is for existing class members but largely mirrors the notice for new class members. *See* Not. to Existing Class Members of Proposed Class Action Settlement, Workman Decl. Ex. A-2, ECF No. 138-2. The notices of class action settlement included with the settlement agreement here generally satisfy Rule 23. The notices adequately explain in plain language the parties to the lawsuit, the claims at issue, and the terms of the settlement. *See generally id*. The notices provide instructions on how to object or opt out with deadlines. *Id*. The notices inform class members that they will be bound by the release of claims if they do not opt out. *Id*.

/////

---

[5] The notice to new class members notes that "[t]he Settlement provides for Individual Settlement Payments based either on the number of eligible workweeks class members worked from January 9, 2013 to January 31, 2022, and/or the amount of vacation time class members accrued, but were not paid, from January 9, 2013 to January 31, 2022." Accordingly, the date of class certification is limited to January 31, 2022. *Hart v. Rick's NY Cabaret Int'l, Inc.*, 2013 WL 11272536 (S.D.N.Y. Nov. 18, 2013) (observing "an open-ended end-date is untenable" because it "fails to take account of the possibility that material facts might change . . . [a]nd it denies the parties, after the close of fact discovery, a practical vehicle for exploring whether there have been material factual changes").

The court notes two deficiencies, however, that must be remedied before any final approval. In the section titled "THE COURT'S FINAL APPROVAL HEARING," the notices state, "You may attend the hearing and you may ask to speak, but you don't have to." *Id.* Later in that same section, it reads, "You may also pay another lawyer to attend, but it is not required." *Id.* This section of the proposed notice to class members must "clarify class members' ability to appear at the final approval hearing with an attorney" by adding "with or without a lawyer" after "attend the hearing" in the second sentence under the section title. *See Stoddart v. Express Servs.*, No. 12-01054, 2021 WL 5761083, at *2 (E.D. Cal. Dec. 3, 2021). Additionally, the proposed notice requires information from new class members seeking exclusion from the class, including telephone numbers, addresses, and the last four digits of Social Security numbers. *See* Not. to New Class Members of Proposed Class Action Settlement. This information exceeds the minimum information requirement of a class member requesting exclusion, which is "(1) the class member's name, (2) a statement that the class member wishes to be excluded from the settlement class . . . , and (3) the class member's signature." *See Haralson*, 383 F. Supp. 3d at 975–76. The notice to new class members must be remedied to require only the minimum information from these employees, before the notice is distributed. In seeking final approval, plaintiffs must submit the notices and verify that they were modified as required here.

## IV.     CONCLUSION

For the foregoing reasons, the court **grants preliminary approval of class settlement** but cautions that the deficiencies identified above must be remedied before it will grant final approval. Specifically, at the final approval hearing, the parties must be prepared to address:

1. The reasonableness of the proposed attorneys' fees, including in light of a lodestar analysis, and litigation expenses;
2. The reasonableness of the incentive awards;
3. The required amendments to the class notice; and
4. Whether the PAGA requirements are satisfied.

The court preliminarily **approves** the proposed class notices, subject to the changes required in the body of this order.

The court orders the following schedule:

Defendant shall provide the contact information for the putative class to RG2 Claims Administration **within 20 days** from entry of this order.

RG2 Claims Administration shall mail Notice Packets to putative class **within 40 days** from entry of this order.

Existing and new class members **shall have 45 days** from the mailing of notice packets to opt-out.

Putative class members shall submit objections, if any, **within 45 days** of the mailing of the notice.

Plaintiffs' motion for final approval and attorney's fees and costs shall be filed **40 days** in advance of the final approval hearing. The parties shall provide their mediation briefs in camera at the time they file the motion for final approval.

The **Final Approval Hearing** is set for **January 6, 2023 at 10 a.m.**

This order resolves ECF No. 138.

IT IS SO ORDERED.

DATED: August 4, 2022.

_____
CHIEF UNITED STATES DISTRICT JUDGE